Chouinard *v.* Wooldridge.

---

JOSEPH H. CHOUINARD, ADMINISTRATOR, *vs.* ANNA WOOLDRIDGE.

First Judicial District, Hartford, January Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

An action for wrongful death, brought by an executor or administrator under § 6137 of the General Statutes, is subject to the remedial provisions of § 6171, relating to the accidental failure of suits; and therefore if the action fails because of a judgment of nonsuit therein—as in the present case—a new action for the same cause may be brought within one year from the determination of the original action, even though it be more than one year from the date of the wrongful act.

Chouinard *v.* Wooldridge.

After the defendant had denied ownership of the motortruck which injured the plaintiff in 1919, and had offered the corroborative testimony of W, her brother-in-law and the operator of the truck, that he was the owner, it appeared in evidence that the car was registered in defendant's name in 1919, 1921 and 1923 and that her signature to the application for registration in 1921 was in W's handwriting. *Held* that this evidence warranted the jury in finding that the defendant owned the truck in 1919.

The plaintiff offered evidence that the defendant lived in the same household with W and her two sons and that she maintained this truck, together with several others, for the use of the three men, who had general authority to drive the cars in their business of transporting mail under contracts made by them with the United States government, and that the proceeds of this business were applied to the common use and support of the family group. The trial court charged the jury that if they found these facts proven, the defendant would be liable for W's negligence while operating the truck within his general authority in the course of the business for which it was maintained. *Held* that the trial court's instruction was a correct application to the facts of the so-called "family car" doctrine which, resting, as it does, upon the modern expansion of the rule of *respondeat superior*, governs the use of a family automobile for business or profit as well as for the more frequent purposes of general convenience or pleasure.

W testified that, at the time of the accident, he was driving the truck in the course of his employment by L, who was not a member of the household, to carry mail in the performance of L's contract with the government. *Held* that this testimony, if believed by the jury, would not affect the defendant's liability, since, upon the evidence, they were free to conclude that W was not L's servant, but merely an independent contractor, and that the truck was owned by the defendant and used for the very purpose for which she maintained it and in which both she and W were financially interested.

Evidence concerning the business relations between W and the defendant subsequent to the date of the accident and down to the time of trial was admissible.

The trial court properly refused the plaintiff's request to charge the jury that the defendant's liability was governed by § 1572 of the General Statutes (in force at the time of the accident but since repealed), since the liability imposed by that statute upon the owner of a motor vehicle was, by its terms, based solely upon the failure of his servant, agent, bailee, or employee to observe the statutory rules of the road, concerning which the complaint in the present case contained no allegations.

Argued January 6th—decided February 23d, 1925.

ACTION to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligent operation of the defendant's automobile, brought to the Superior Court in Hartford County and tried to the jury before *Avery, J.;* verdict and judgment for the plaintiff for $2,000, and appeal by the defendant. *No error.*

On the trial of this action the plaintiff offered evidence to prove and claimed to have proved, that the decedent, while in the exercise of due care, was run down by a Ford mailtruck operated by one Jacob Wooldridge, and thereby received injuries resulting in death; that the proximate cause of the collision was the negligent operation of the truck; that the truck was owned by the defendant, being one of a fleet of trucks owned and maintained by the defendant specially adapted to the transportation of mail; that the defendant with her two sons and Jacob Wooldridge, her brother-in-law, lived as one family in the same house; that Jacob and the two sons took contracts for the carriage of mail; that the defendant owned and maintained the fleet of trucks for the use of Jacob and her sons in the carriage of mails; that the Ford truck in question was being used for that purpose by Jacob under the authority of the defendant at the time of the accident; and that the proceeds of the business of carrying mail in the defendant's trucks were applied to the use and maintenance of the family group. The defendant claimed to have proved that the Ford truck was not owned by her, but by Jacob, then her brother-in-law and, at the time of the trial, her husband, and that he was operating it on his own private business with which she had no connection; that, at the time of the accident, Jacob was exercising due care in the operation of the truck; that the decedent's injuries were caused by his own negligence in

stepping back into the path of the truck after he had reached a place of safety; and that the injuries received by the decedent were not the cause of his death.

The jury by their general verdict found all these issues of fact for the plaintiff. The testimony relevant to the discussion of the assignments of error is referred to in more detail in the opinion.

The assignments of error pursued on the brief relate to the ruling of the court upon the defendant's second defense, to the refusal of the court to direct a verdict for defendant, to its refusal to set aside the verdict for the plaintiff, to certain rulings on evidence, and to alleged errors in the charge of the court.

*Henry J. Calnen,* for the appellant (defendant).

*John A. Danaher* and *William M. Harney,* for the appellee (plaintiff).

BEACH, J.   The court, after argument, refused to hear testimony in support of the defendant's second defense, which alleged that on May 14th, 1923, a judgment of nonsuit in favor of the defendant was given in the Superior Court in Hartford County in a suit brought by the same plaintiff upon the same cause of action upon which the present suit is based.   The point being that the second action was not commenced within the time limited by § 6137 of the General Statutes.   The defendant's claim is that § 6171 of the General Statutes does not apply to actions for wrongful death commenced by an administrator.   Section 6171 provides that if any action, commenced within the time limited by law, has failed to be tried on its merits for the reason, among others, that a judgment of nonsuit is rendered, "the plaintiff, or, if the plaintiff be dead and the action by law survive, his executor or ad-

ministrator, may commence a new action . . . within one year after the determination of the original action." The precise claim now made by the defendant was made and overruled in *Korb* v. *Bridgeport Gas Light Co.*, 91 Conn. 395, 99 Atl. 1048.

In that case, as in this, the administrator brought an action for wrongful death in due season, in which action a nonsuit was suffered, and subsequently commenced a new action within one year after the nonsuit, but after the time limited by § 6137 had expired; and we held, for reasons stated at length on pages 397-402, that the second action was saved by § 6171. The first and fifth assignments of error are overruled on the authority of *Korb* v. *Bridgeport Gas Light Co.*, *supra*.

The third and fourth assignments of error are that the court erred in refusing to direct a verdict for defendant and erred in refusing to set aside the verdict for the plaintiff. The specific claims made in support of these assignments are that there was no evidence from which the jury could reasonably have found that the defendant owned the Ford truck in question, and none from which they could reasonably have found that it was being used on the defendant's business at the time of the accident.

As to the first point it was proved beyond question that the truck was registered in the name of the defendant as owner in 1919, when the accident occurred, and again in 1921, and again in 1923; and that in 1921 the signature to the application for registration describing the defendant as owner was in Jacob's own handwriting. That being so, the jury were justified in rejecting Jacob's testimony that he owned the truck from 1915 down to the time of the trial, and in accepting the repeated registrations of the car in the defendant's name as sufficient evidence of her ownership in 1919, when it was so registered.

There was also a conflict of testimony as to whether the truck was being used in the defendant's business at the time of the accident. Jacob testified that in 1919 he was employed by a man named Long, who had a contract for the carriage of mail from Hartford to Glastonbury; that he remained in Long's employ until some time after the accident, and was using the truck under that employment. The defendant testified to the same effect. The probative effect of this testimony must be considered with regard to the undoubted fact that the jury believed and found that this truck belonged to the defendant, and that it was one of the fleet of trucks owned and maintained by her for use in the transportation of mail. Jacob, then, was not driving Long's truck, or his own truck, but was driving the defendant's truck. She was engaged continuously, from some time before 1919 down to the time of the trial in 1923, in a growing business of supplying mail trucks for the use of the other male members of the family group, and she admitted that the proceeds derived from the transportation of mail in all her other trucks were applied for the common benefit of the family group including herself. The attempt to segregate this Ford truck from the family business, on the ground that it belonged to Jacob, had failed; and, in the absence of other evidence to the contrary, the jury were entitled to infer that this truck also —even if used in transporting mail under the Long contract—was used for profit, as were the defendant's other trucks engaged in the same kind of business. In this connection we note that the defendant, being called as a witness in her own behalf, was asked on direct examination whether in 1919 Jacob paid her anything for the use of this truck; to which she replied, "It was not mine," and the subject was then dropped. Since the jury did not believe that

statement, and were not bound to believe it, they may well have inferred that the defendant did not want to answer that question directly. Inquiry into the details of the arrangement under which Jacob was permitted to use this truck continuously was barred by the line of defense unsuccessfully attempted. The defendant's sons were not called as witnesses. The jury, having found that the defendant did own the truck, were left with the bare fact that Jacob was permitted to use it for the same general purpose for which the defendant's other mail trucks were owned and maintained; and we think they were entitled to infer that, at the time of the accident, Jacob was using it on substantially the same terms upon which the other male members of the family group were admittedly using the other mail trucks used by the defendant. It does not appear whether Jacob, in his dealings with Long, held himself out as the owner of the truck in question; but whether that is so or not, it is clear that Jacob was not employed by Long as a mere servant, but rather that he appeared to the jury to be a subcontractor furnishing and operating a truck belonging to the defendant, and it was not inconsistent with that sort of employment by Long for the jury to find that he was at the same time using the truck upon a business in which he and the defendant were financially interested.

The rulings on evidence complained of, consisted in the admission of testimony tending to show the business relations between Jacob and the defendant subsequent to the date of the accident and down to the time of the trial. It was objected that the testimony was irrelevant, but we are of the opinion that it was relevant as showing the continuity of the business in which the defendant was engaged, and of the continued use of the truck in question in that business after Jacob had ceased to be employed by Long, and

relevant as bearing on the plaintiff's claim that the business was for the common benefit of the family group to which Jacob and the defendant belonged.

The alleged errors in the charge relate to the charge of the court in respect to the "family car" doctrine commented on in *Wolf* v. *Sulik*, 93 Conn. 431, 106 Atl. 443, and adopted in *Stickney* v. *Epstein*, 100 Conn. 170, 123 Atl. 1. In stating the propositions which the plaintiff was bound to establish by a preponderance of the evidence, the court said: "The first proposition is this: that the defendant owned the automobile in question . . . and that it was being operated in her business. The law, gentlemen, is so that when a motorcar is maintained by the head of the family for the general use and convenience of his family, or her family, he or she is liable for the negligence of a member of the family having general authority to drive it, while the car is being used as a family car. Now all the essentials of that statement of the law must be established by the plaintiff. That is, that she owned the car, that it was being driven by a member of the family having general authority to drive it, and that it was being used at the time of the accident as a family car, that is, for the purpose for which she had and maintained the car, if she did have it and maintain it."

The court then pointed out that the parties were in dispute as to these facts, and stated the claims made by each; stating the plaintiff's claim as to the purpose for which the defendant had and maintained the car as follows: "that she lived with her two sons; that she lived with this Jacob Wooldridge—that is, he was living in the house with her at the time—a brother-in-law—he has since become her husband; that Jacob Wooldridge and the two sons took contracts to carry mail and used the cars, among other things, for that

purpose and that that was done as a family matter; that the proceeds came into the family and that was the very purpose for which she maintained the cars and had them; that they might be used by the members of her family in carrying out these mail contracts, and the proceeds came into the hands of the various members of the family and were used in the family. They claim that is a fair inference for you to draw in this case." The defendant does not seem to deny that this was a fair statement of the plaintiff's claim, nor is it denied that the charge correctly states the proposition of law laid down in the case of *Stickney* v. *Epstein, supra.* The defendant's claim is that the court should have charged the jury that the defendant's liability, if any, was governed solely by § 1572 of the General Statutes, in force at the time of the accident and since repealed; that the court erred in failing to so charge the jury, and that the family car doctrine applies only to pleasure cars, and is not applicable to cars owned and maintained for use in a business carried on for profit.

*Wolf* v. *Sulik, supra,* was an action brought upon § 1572, which provided, among other things, that the owner of a vehicle who entrusted it to a bailee for use upon the public highways should be liable for damage caused by the neglect of the bailee to conform to the rules of the road contained in § 1568, "while in the performance of such owner's business within the scope of his authority." The complaint alleged, and it was not denied, that the car in question was owned by the defendant and maintained "for the use and pleasure of her family." The material facts were that her husband had general authority to use it as he pleased, and that while so using it he injured the plaintiff's wagon by neglecting to conform to § 1568. The point chiefly contested, and ruled in favor of the plaintiff, was that

"the statute is for the protection of the public, and the phrase 'in the performance of such owner's business' must include vehicles driven for pleasure as well as for profit." That is to say, the word "business," in § 1572, was held to include all the purposes for which the owner did in fact own and maintain the car, including the use and convenience of the family group; and in that respect the statute was closely assimilated to the "family car" doctrine, which, though not applied in that case, was discussed and in principle approved.

In *Stickney* v. *Epstein,* decided since § 1572 was repealed, we have definitely adopted the family car doctrine and pointed out that it was in principle approved in *Wolf* v. *Sulik.* And in each of those cases it is said that the common-law rule *respondeat superior,* in its modern applications, "rests on the broad ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his affairs and within the scope of their authority." This is so whether the affairs in question are, or are not, conducted for profit, and we are of opinion that the portion of the charge complained of correctly states a rule of law applicable to the facts claimed by the plaintiff.

The objection that the court erred in not charging the jury that § 1572, in force at the time of the accident, applied to the case, is without force, because the liability imposed by that statute was predicated solely upon a neglect to conform to the provisions of §§ 1568 and 1569; and the plaintiff made no claim that the accident was due to a statutory negligence of any kind.

There is no error.

In this opinion the other judges concurred, except

KELLOGG, J., who died after the cause was argued and before its decision.