GEORGE W. SMART, ADMINISTRATOR, *vs.* J. M. BISSONETTE ET AL.

First Judicial District, Hartford, May Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

The automobile of the defendant B, proceeding in a northerly direction, turned out to pass a car parked on the easterly side of the highway, and collided with the oncoming car of the defendant D, with the result that the latter struck and killed the plaintiff's intestate, who was standing on the westerly sidewalk opposite the parked car and in a place of apparent safety. The jury returned a verdict for the plaintiff against both defendants. *Held* that the verdict was supported by the evidence and was not inconsistent with the indisputable physical facts in the case.

Liability under the so-called "family-car" doctrine is not based upon a consanguineous relationship between the owner and driver of the car, but upon the necessity of extending the rule of *respondeat superior* to meet the demands of public policy and social justice. Therefore, the "family" to which the doctrine may apply includes all those members of the collective group living in the owner's household for whose convenience the car is actually maintained and who have general authority to drive it, regardless of whether they are bound to him by the ties of relationship.

Smart *v.* Bissonette.

In the present case, the driver of B's car had lived in his home as his housekeeper for sixteen years, and though she was in no way related to him, she had general authority to use the car for her own pleasure at any time without requesting special permission. *Held* that B was liable for her negligent operation of the car.

One statement in a charge to the jury which imposes upon the operator of a motor vehicle the impossible burden of "so managing his car that no other person . . . will be injured," will not be held reversible error where the charge as a whole correctly and adequately defines the proper standard of care.

The trial court's remark that "a collision occurring in broad daylight on a public highway between two cars going in opposite directions would seem to indicate that at least one of those drivers was negligent," did not transgress the bounds of legitimate comment upon the evidence.

Argued May 6th—decided July 25th, 1927.

ACTION to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the defendants' negligence, brought to the Superior Court in Hartford County and tried to the jury before *Booth, J.;* verdict and judgment for the plaintiff for $10,000, and appeal by the defendants. *No error.*

*Richard H. Deming,* for the appellant (defendant J. M. Bissonette).

*Joseph F. Berry,* for the appellant (defendant Leslie Dutton).

*Henry H. Hunt,* for the appellee (plaintiff).

BANKS, J.    Since the trial in the Superior Court the death of the plaintiff George W. Smart, administrator, and that of the defendant J. M. Bissonette have been suggested upon the record, and by order of that court the Hartford Aetna National Bank, administrator, has been substituted as plaintiff, and Joseph Israel Lord, administrator, has been substituted as a party defendant.

The complaint alleges that while the plaintiff's intestate was standing upon the sidewalk on the west side of Main Street in the town of East Hartford, the motor vehicles owned by the respective defendants approached from opposite directions and by reason of the negligence of both operators collided in the street opposite the spot where plaintiff's intestate was standing, and that the motor vehicle of the defendant Dutton, as a result of such collision, struck plaintiff's intestate, inflicting injuries which caused her death. The appeal is from the denial of motions of both defendants to set aside a verdict in favor of the plaintiff and for claimed errors in the charge.

It was conceded that plaintiff's intestate was in the exercise of due care as she stood upon the sidewalk in a place of apparent safety, and it was the claim of each defendant that the collision was caused by the negligence of the operator of the car of the other defendant. The paved portion of the street in front of plaintiff's intestate as she stood on the sidewalk was about nineteen feet wide. Directly opposite her stood a car facing north, about half of the car being on the paved street and half on the shoulder. The Bissonette car, coming from the south, turned out to pass the car parked on the east side of the street and came into collision with the Dutton car, which was coming from the north, the collision occurring when the three cars were about abreast on the street. These facts were undisputed. Each defendant claimed that the other was on the wrong side of the road when the collision occurred. It is admitted that there was a conflict in the evidence upon this point, but each defendant makes the claim that the physical facts resolved the apparent conflict by showing that the testimony which created it was either unintentionally or intentionally untrue because in conflict with indispu-

table physical facts. *Richard* v. *New York, N. H. & H. R. Co.,* 104 Conn. 229, 232, 132 Atl. 451. The fact that this claim is made by both defendants would seem to indicate that the physical facts may not have been entirely indisputable, which is confirmed by a careful examination of the evidence. There was no error in the denial of the motion to set aside the verdict.

The complaint alleged that the car of the defendant Bissonette was at the time of the accident being operated by one Marie Joillet, a member of his family, and that it was being operated as a family car. This allegation was denied. The finding also states that the evidence offered by the plaintiff upon this issue was that Marie Joillet had been housekeeper for Father Bissonette for sixteen years and lived in his household; that he had bought the car about a year before the accident for his own use; that it was not bought or kept for her pleasure, but that she had general permission to use it and had used it every day for three or four weeks before the accident; that it was known as the car for her use and that she did not have to ask permission to use it each day; that one of Father Bissonette's curates who lived in the house also had general permission to use it, and that on the day of the accident she was using it for her own pleasure. The court charged the jury that upon the uncontradicted evidence the car was being driven by a member of this defendant's family who had general authority to drive it, that it was being used at the time of the accident as a family car, and that the defendant Bissonette was responsible for its operation at that time. This portion of the charge is assigned as error in the appeal of Bissonette. No complaint is made of the action of the court in failing to submit any question of fact to the jury, but it is claimed, upon the concededly undisputed facts, that the defendant Bissonette was

not responsible for the operation of the car by Miss Joillet as a "family car."

The so-called "family-car doctrine" has been restated and its limitations defined in the recent case of *O'Keefe* v. *Fitzgerald, ante,* p. 294, 137 Atl. 858. Liability under this doctrine is predicated upon the maintenance of a car by its owner for the general use and convenience of his family and its use for that purpose by a member of the family having general authority to drive it. In *O'Keefe* v. *Fitzgerald, supra,* the main issue was as to the nature of the authority of the driver of the car. Here it is as to the status of the driver as a member of the family of the owner of the car. It is not questioned that Miss Joillet had general authority to drive the car, but it is claimed that, upon the undisputed facts, she was not a member of the family of the owner of the car for whose convenience it was maintained. Miss Joillet was not related by blood or otherwise to Father Bissonette, and was not therefore a member of his family in the sense that the word is frequently used as descriptive of a group, membership in which is dependent upon relationship. The word is also used to embrace all the members of a collective body of persons living in one household and under one head and government; *Piccinim* v. *Connecticut Light & Power Co.,* 93 Conn. 423, 425, 106 Atl. 330; that, in considering the question of responsibility for the use of a "family car," the family group is not limited to those bound together by the ties of relationship, becomes clear when we examine the ground upon which the liability in such cases is predicated; that has nowhere been more clearly stated than in the case of *Wolf* v. *Sulik,* 93 Conn. 431, 106 Atl. 443, although that case was decided under a statute since repealed. As was there said (p. 436), the liability "rests on the broader ground that every man who pre-

fers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority." This is clearly an extension of the rule of *respondeat superior* to the situation here presented, which is based upon considerations of public policy and social justice. *Stickney* v. *Epstein,* 100 Conn. 170, 179, 123 Atl. 1; *Chouinard* v. *Wooldridge,* 102 Conn. 66, 75, 127, Atl. 908; *Haugh* v. *Kirsch,* 105 Conn. 429, 135 Atl. 568; *O'Keefe* v. *Fitzgerald, supra.* Obviously, the basis of liability is the master-servant relationship and not that based on consanguinity. The owner of the car may be the "paterfamilias," the head of the household, who maintains the car for the general use and convenience of his family, but the family group is not necessarily confined to those of his own kindred; it includes all those members of the collective body of persons living in his household for whose convenience the car is actually maintained and who have general authority to use it.

We think the trial court was right in its charge that Miss Joillet was a member of the family of Father Bissonette. She had been his housekeeper for sixteen years and was a member of his domestic establishment. That she had general authority to drive the car and had driven it every day since she started to drive it, was, as we have said, not disputed. There was no error in this portion of the charge holding the defendant Bissonette responsible for the operation of his car at the time of the accident.

In the course of its charge the court, in defining the duty of the driver of a motor vehicle upon the highway, used the following language: "Now, in this particular case, of course, the question is the due care required

on the part of the driver of a motor vehicle upon the public highway. Every driver of a motor vehicle has imposed upon him or her the duty of so managing his car that no other person, either upon the highway or in close proximity to it, will be injured. Failure to use that care is negligence." Standing by itself the second sentence above quoted imposes too great a duty upon the driver of a motor vehicle—in effect that of an insurer, eliminating all question of negligence or due care. The sentences immediately preceding and following make it obvious, however, that what the court meant was that it was the duty of the driver to use due care to prevent injury to other persons. The court had just told the jury that in order to recover the plaintiff must prove the negligence of the defendants, one or both, and had given them the usual definitions of negligence and due care. Throughout the charge the jury were repeatedly told that they were to determine whether or not either or both of the drivers were negligent, and that in the last analysis the question was whether they acted as reasonably prudent men would have acted in similar circumstances. The jury could not have been misled by the inadvertent omission to qualify the statement in the single sentence which is criticised. The charge must be considered as a whole, and error will not be predicated upon a single misstatement if the charge as a whole is sufficient to adequately guide the jury. *Salemme* v. *Mulloy,* 99 Conn. 474, 482, 121 Atl. 870. The statement in the charge, that "a collision occurring in broad daylight on a public highway between two cars going in opposite directions would seem to indicate that at least one of those drivers was negligent," did not transgress the proper bounds of comment by the court upon the evidence. *Cullom* v. *Colwell,* 85 Conn. 459, 463, 83 Atl. 695. The charge

upon the question of proximate cause was'not open to criticism.

There is no error.

In this opinion the other judges concurred.