JOHN T. SLATTERY *vs.* MARTIN J. O'MEARA ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 3d—decided November 5th, 1935.

*James E. Cannon* and *Joseph J. Mullen,* for the appellant (plaintiff).

*Joseph F. Berry,* for the appellee (named defendant).

HAINES, J. A Ford car driven by defendant Lewis was in collision with a Chevrolet driven by defendant Baker between 11 and 12 p. m. on July 13th, 1934, at or near the intersection of Washington and Russ Streets in the city of Hartford. Two passengers, Margaret Egan and the present plaintiff Slattery, were in the car driven by Baker, and all four persons were injured. This plaintiff sought to recover damages from Baker under the guest statute, and from Lewis and from O'Meara (doing business as the O'Meara Motor Company), on the ground of negligence, alleging that Lewis was the agent of O'Meara and acting within the scope of his authority as such. It is from the judgment in favor of O'Meara that this appeal is taken.

After careful consideration of the appellant's requests for changes in the finding, we find the established facts are that the defendant Lewis was an automobile salesman for the defendant O'Meara (doing business as O'Meara Motor Company), the latter having a place of business in East Hartford, engaged in buying, selling and repairing automobiles, and having the agency for the sale of new Ford cars. Under his contract of employment by O'Meara, Lewis began his work at 8.30 a. m., reported at noon and at 6 p. m., his required hours being from 8.30 a. m. to 6 p. m. On July 13th, 1934, the last act of Lewis for the day in behalf of O'Meara was the delivery of a car at 5.30 p. m. After going off duty he and another salesman remained in O'Meara's salesroom until about 9 p. m. and then went to a restaurant and had supper. While there they arranged to get two girl friends and go out for the evening and pursuant thereto drove with the girls in a Ford car to a night club on the Berlin turnpike, where they remained until about 11.35 p. m. They then drove back to Hartford where the party dispersed. Thereafter Lewis alone in the Ford car drove

north through Washington Street and was turning into Russ Street on his way home when his car came into collision with the Chevrolet car as above stated. The controlling question upon this appeal is whether Lewis was the agent of O'Meara and was acting within the scope of his authority at the time of the collision.

All the salesmen of O'Meara who were engaged in the sale of new Ford cars, including Lewis, were required to obtain a new Ford from O'Meara upon a conditional bill of sale, and they paid instalments thereon to the Universal Credit Company to which O'Meara assigned the conditional sales contracts. The representative of the Credit Company had his office in O'Meara's building. Lewis obtained the Ford car in question on March 30th, 1934, under the above stated conditions and used it in part as a demonstrator. He had the car in his own possession and he kept it nights at his own home. It is found that one reason why Lewis drove a new Ford car as a salesman was to show his car at all times and to have it available to show to prospects. It further appears that the car possessed by Lewis was washed and serviced at the expense of O'Meara, who also paid the taxes on it and the State registration fees; and the cost of repairing the car after the collision was borne by O'Meara. Five gallons of gas per day were also furnished by O'Meara for the use of each car, and the license plates used on the Lewis car were the dealer's plates of O'Meara, no car being registered in the name of Lewis at the time of the)collision. Further findings which are uncontradicted are as follows: "There was no limitation as to the use the defendant Lewis made of said Ford car during the hours of his employment or otherwise." "The defendant Lewis did not have to ask permission of the defendant O'Meara on those occasions when he desired to use it for his own busi-

ness or pleasure, but could use it any time he so desired either for his business or his own pleasure."

The appellant contends that "any man who entrusts another with his car, giving him general authority to use it, and it is being used for the purpose for which the owner kept it, should be held liable to any third person that is injured by the negligent act of the person so entrusted with the car." It was claimed, though not found by the court, that O'Meara maintained the car for the unlimited use of Lewis with the object of keeping a new Ford upon the road at all times for the public to see, and it is contended that this purpose was served whether it was being operated in a direct effort to promote O'Meara's business or for the pleasure of Lewis himself.

The premise is deduced from our reasoning in *Wolf v. Sulik*, 93 Conn. 431, 106 Atl. 443. That case was decided under a statute which provided that the owner who entrusted any vehicle to his agent, bailee, servant or employee to be operated or driven by him upon the public highways, shall be responsible to a third party who is injured by the latter's negligence while so doing. General Statutes, 1918, § 1572. In construing that statute we held that where the car was maintained by a wife for the use and pleasure of her family, and her husband was operating it at the time for the purpose for which it was maintained, and within the authority conferred upon him, the owner was responsible, one judge dissenting. That was followed by *Stickney v. Epstein*, 100 Conn. 170, 123 Atl. 1, the statute in question having previously been repealed by Public Acts of 1921, Chapter 334. In that case the head of a family maintained a car for the general use and convenience of his family, and we held that he was liable to a third person who was injured by the negligence of the wife in the use of the car,

basing our decision upon public policy and the inherent justice of extending the common-law rule of respondent superior to cover cases where "a paterfamilias maintains an automobile for the pleasure, use and convenience of his family and in pursuance of said purpose authorizes members of his family to use it for such purpose, [and] by so doing makes such pleasure uses his affair, and constitutes members of the family so operating the car his agents engaged in the prosecution of his affairs." "The purpose for which the defendant's wife was operating the automobile was a family purpose, and it was the purpose for which the defendant intended the automobile to be used, and at the time the plaintiff was injured the automobile was being used by the defendant's wife in carrying out the purpose for which the defendant maintained the automobile."

This so-called "family car doctrine" is now firmly established in this State, but it finds its limitation in the family relation. *Marshal* v. *Fenton,* 107 Conn. 728, 731, 732, 142 Atl. 403; *O'Keefe* v. *Fitzgerald,* 106 Conn. 294, 137 Atl. 858. Within that relation we include all members of the owner's household—without regard to the ties of consanguinity—for whose convenience the car is maintained and who have general authority to drive it. *Smart* v. *Bissonette,* 106 Conn. 447, 138 Atl. 365. This doctrine applies where the member of the family who is using the car is carrying out the very purpose for which the owner maintained it. Thus in *Wolf* v. *Sulik,* supra, p. 437, it appeared that the defendant owner maintained a pleasure car for the convenience of her husband. If in carrying out her purpose she had employed a chauffeur to drive him about, she would have been liable on the principle above stated, for the chauffeur's neglect while so engaged. On the other hand, if she chose to eliminate

the chauffeur and to authorize her husband to drive himself about, "there seems to be no reason, except the traditional limitations of the rule respondeat superior, why she should not also be liable for his neglect while so engaged. She is still accomplishing her original purpose, and still managing her own affair through another."

In the instant case it is not, and upon the evidence could not be found that O'Meara's purpose in permitting his salesmen to operate the cars in their possession at any and all times, was to further sales by keeping new cars on the road as much as possible. If he did benefit by such operation, it does not appear that it was other than incidental to such unlimited use, and it cannot be given controlling weight in deciding whether the drivers were, at any particular time, acting as his agents, so as to make him responsible for their negligence. *Card* v. *Bissing,* 114 Conn. 71, 74, 157 Atl. 644. This case must be decided upon the common-law rule of master and servant, under which it is necessary to establish that Lewis was the agent of O'Meara and acting upon O'Meara's business within the authority vested in him upon the occasion in question. *Matulis* v. *Gans,* 107 Conn. 562, 565, 141 Atl. 870; *Dunn* v. *Santamauro,* 119 Conn. 307, 309, 175 Atl. 913.

Proof that O'Meara owned the car and that Lewis was in his general employ would be insufficient to show prima facie that Lewis was engaged on O'Meara's business at the time of the collision. *Middletown Trust Co.* v. *Bregman,* 118 Conn. 651, 174 Atl. 67. The conclusion of the trial court, justified as it is by the established fact that Lewis was on "a frolic of his own," effectually disposes of the question whether he was acting at that time within the scope of his employment by O'Meara. Agency cannot be

found if there was by the agent, "such a total departure from the course of the defendant's business that the enterprise may be said to have been merely 'a frolic of his own.'" *Ackerson* v. *Jennings Co., Inc.,* 107 Conn. 392, 398, 140 Atl. 760; *Lane* v. *Ajax Rubber Co.,* 99 Conn. 16, 120 Atl. 724; *Adomaitis* v. *Hopkins,* 95 Conn. 239, 111 Atl. 178.

What has been said is based upon the assumption that O'Meara owned the car. The defendant contends that Lewis was the owner. It is unnecessary for us to pass upon this contention because under the established facts if Lewis was the owner no liability for this collision can attach to O'Meara and if O'Meara was the owner it still appears that Lewis was not acting under his authority as his agent, but solely upon an affair of his own.

There is no error.

In this opinion the other judges concurred.