PHILOMENA DURSO *v.* A. D. COZZOLINO, INC.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued March 5—decided May 8, 1941.

*Louis Feinmark,* with whom was *Nathan Winnick,* for the appellant (plaintiff).

*John E. McNerney,* with whom was *Francis J. Moran,* for the appellee (defendant).

MALTBIE, C. J.   The plaintiff brought this action to recover damages suffered by reason of the negligence of Marie Cozzolino in operating an automobile in which the plaintiff was riding as a guest and seeks to hold the defendant corporation, owner of the automobile, liable upon principles akin to those involved in the so-called family car doctrine.   The corporation is a successor to a business created and established by Marie's father, A. D. Cozzolino.   He owns 25 per cent of the stock, his wife owns 50 per cent, and his wife's brother 25 per cent.   Ever since the organization of the corporation, Cozzolino has been its managing head

and in control of its business and activities. As manager of the corporate business, he purchased the automobile in question, and the corporation has paid for its maintenance, and insured it for both business and personal uses. The automobile was purchased for the use of Cozzolino in the corporate business and, when not needed by him, of Marie in going to and from school and for other personal purposes. With the knowledge and consent of the defendant, she had general use of it on all occasions when it was not being used by Cozzolino in business. This use by her was an incident to the stock ownership of Mr. and Mrs. Cozzolino in the corporation. When the car was needed for business purposes Marie used a car owned by her father and on occasions a truck to go to and from school. The corporation also furnished Mrs. Cozzolino a car for her personal use. The plaintiff was injured while being driven from her home to that of the Cozzolinos, where she was to have dinner. The trial court gave judgment for the defendant upon the ground that Marie was not the agent or employee of the defendant or engaged upon its business when the accident occurred.

It is the established doctrine in this state that where the head of a family owns and maintains a car for the general use of members of the household, and a person is injured by the negligence of one of them who has general authority to use it, and is using it at the time within the scope of the general purposes for which it is intended, he may recover damages from the owner. *O'Keefe* v. *Fitzgerald,* 106 Conn. 294, 297, 137 Atl. 858; *Marshall* v. *Fenton,* 107 Conn. 728, 730, 142 Atl. 403; *Maher* v. *Fahy,* 112 Conn. 76, 80, 151 Atl. 318. So far as this state is concerned, the doctrine originated in the case of *Wolf* v. *Sulik,* 93 Conn. 431, 106 Atl. 443. While we were there primarily considering liability

under a statute, the discussion went beyond its effect and set forth certain principles which have since been applied, despite its repeal. *Stickney* v. *Epstein*, 100 Conn. 170, 176, 123 Atl. 1.

In the *Wolf* case, after stating the family car doctrine as it had been established in other jurisdictions, we said (p. 436): "The inherent justice of the rule thus stated is apparent, and the chief reason why some courts have declined to follow it, is because, on the facts of the case, they could not spell out the relation of master and servant, which at the common law must necessarily be established before the rule *respondeat superior* becomes applicable at all. . . . The difficulty of formulating any satisfactory explanation for all of the recognized applications of the rule *respondeat superior* is well understood, but it is generally accepted as a necessary rule of public policy and social justice. Under an older and simpler economic system, the rule was restricted in its application to the relation of master and servant, and in its origin that relation rested on the right of one man to control the conduct of another. But theoretically as well as practically, the master's responsibility for the negligence of his servant extends far beyond his actual or possible control over the conduct of the servant. It rests on the broader ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority. In this case the defendant desired to maintain a pleasure car for the convenience of her husband. If in carrying out her purpose she had employed a chauffeur to drive him about, she would have been liable, on the principle above stated, for the chauffeur's neglect while so engaged. Now, suppose

that she chooses to eliminate the chauffeur and to authorize her husband to drive himself about. There seems to be no reason, except the traditional limitations of the rule *respondeat superior,* why she should not also be liable for his neglect, while so engaged. She is still accomplishing her original purpose, and still managing her own affair through another."

In *Chouinard* v. *Woolridge,* 102 Conn. 66, 74, 127 Atl. 908, the facts were that the defendant lived in the same household with her two sons and her brother-in-law; that she maintained several trucks for their use and that they had general authority to drive them in their business of transporting mail under contracts with the United States government, the proceeds being applied to the common use and support of the family group; and we held, under the principles of the *Wolf* and *Epstein* cases that the court was correct in instructing the jury that if they found these to be the facts she would be liable for damages incurred because of the negligence of the son-in-law while operating one of the trucks in the course of the business. We said (p. 75) that in the *Wolf* case, the word "business" as used in the statute then before the court was held to include all the purposes for which the owner did in fact own and maintain the car, including the use and convenience of the family group, and that the underlying purpose of public policy applied "whether the affairs are or are not conducted for profit." In *Smart* v. *Bissonette,* 106 Conn. 447, 138 Atl. 365, we held that one who owned and maintained a car was liable for the negligence of his housekeeper, who had lived in his home for sixteen years, though in no way related to him, and who had general authority to use the car without asking special permission; and we said (p. 451): ". . . that, in considering the question of responsibility for the use of a 'family car,' the family group

is not limited to those bound together by the ties of relationship, becomes clear when we examine the ground upon which the liability in such cases is predicated," and further (p. 452): "Obviously, the basis of liability is the master-servant relationship and not that based on consanguinity." The statement in *Slattery* v. *O'Meara,* 120 Conn. 465, 469, 181 Atl. 610, that the family car doctrine "finds its limitation in the family relation," not necessary to the decision in the case, cannot be regarded as a ruling forbidding the application in such a case as the one before us of the underlying principles upon which that doctrine rests.

The basis of liability is that one who owns and maintains a car for the general use of his household is held upon grounds of public policy and in analogy to the principles governing agency to make the use of the car for such purposes a part of his business, so that any member using it for those purposes under general authority to do so becomes his representative, for whose negligence he is responsible; that the car is at times used for business purposes does not matter; nor does liability depend upon any relationship of consanguinity between the owner and the person using it. *Smith* v. *Jordan,* 211 Mass. 269, 271, 97 N. E. 761; *Jones* v. *Knapp,* 104 Vt. 5, 9, 156 Atl. 399; *Birch* v. *Abercrombie,* 74 Wash. 486, 493, 133 Pac. 1020; *Linch* v. *Dobson,* 108 Neb. 632, 635, 188 N. W. 227; *Denison* v. *McNorton,* 228 Fed. 401, 405. This rule is in the nature of an exception to the general principle that one who permits another to use his car does not thereby become liable for the negligent conduct of that other, unless in driving it he is pursuing an agency or employment for the owner. *Whiteman* v. *Al's Tire & Service Garage, Inc.,* 115 Conn. 379, 382, 161 Atl. 519; *Slattery* v. *O'Meara,* supra, 470. We have no disposition to extend the exception beyond the scope of

use for family purposes. But if a car is maintained for the general use of a family, we see no valid distinction between a situation where it is owned and maintained by a member of the family and one where, as here, it is owned and maintained by a family corporation for the use of the family of its managing head and one of its principal stockholders. In such a situation the controlling element is the scope of the intended use of the car rather than the mere fact that it is owned and maintained by the corporation. The reason underlying the doctrine exists no less in such a situation than in one where title to the car is in a member of the family. Indeed, to hold otherwise, would make it possible, in the case of a family corporation such as the one before us, to avoid liability under the family car doctrine by having automobiles for the use of the families of its officers owned and maintained by the corporation. As applied to such a case as the one before us, we cannot regard as authoritative the statement in *Keller* v. *Federal Bob Brannon Truck Co.*, 151 Tenn. 427, 437, 269 S. W. 914, that the family car doctrine cannot be applied to a corporation. The trial court was in error in its ruling that the defendant corporation was not liable for damages caused by the negligence of Marie while operating the car under circumstances clearly within her general authority to do so.

There is error, and the case is remanded with direction to enter judgment for the plaintiff, for such damages as resulted from the negligence of the driver of the defendant's automobile.

In this opinion the other judges concurred.