EMILY SHAKER, ADMX.

*vs.*

GEORGE SHAKER

Superior Court　　　Fairfield County　　　File No. 60234

MEMORANDUM FILED JANUARY 14, 1942.

*Wilson, Hanna & Wanderer,* of Danbury, for the Plaintiff.

*Pullman & Comley,* of Bridgeport, for the Defendant.

Memorandum of decision in action for wrongful death.

QUINLAN, J. A statement of the facts of this case is most essential, not only for a determination of the case, but to an understanding of the claims made by the respective parties.

The action was brought originally by the estate of one James G. Shaker against his son, George Shaker, for damages for the deceased's death arising from the alleged negligent operation of an automobile operated by the son George, of which his father was an occupant. James Shaker resided in Bethel with his family, over a vegetable and fruit market which he conducted. The members of the Shaker family were the father and mother, a daughter, Josephine (made a defendant after the sustaining of a demurrer filed by George), her sister, Emily, and George.

The father was 66 years of age and never operated an automobile and possessed no license. Josephine, her sister and George did possess such licenses. After the father had established his business at Bethel it prospered and the defendant, Josephine, thought she would get her father a little truck to use in the business. She had some money from some insurance and with other of her savings purchased a panel body Ford truck.

This truck was registered in Josephine's name, and on the trial she claimed to own it. The father paid for repairs of the car, bought the gasoline for it and insurance premiums were paid out of store funds. The car was used in the business to go back and forth for vegetables and once in a while for deliveries, and the said truck had the name "Bethel Fruit and Vegetable Market" painted on the outside. On such occasions George, and sometimes his sisters, drove the truck. George was 18 years old and was supported by the father along with the rest of the family.

On July 8, 1939, the truck was engaged in a trip to Waterbury to obtain vegetables. It was used for this purpose as much as three times a week. As it was proceeding down the concrete paved hill from Newtown to Sandy Hook, it left the road and came in contact with a tree, the father sustaining injuries from which he died.

From these facts the following claims are made:

1. That the son, George, is liable.

2. That if he is not, his sister, Josephine, is the responsible party under the family car doctrine.

3. That the son's negligence is not imputable to his father

The defendant takes issue with all these claims. They will be discussed in order.

## I and III.

On the trial, on the theory that the court might not feel impelled to follow the decision on the demurrer by the court ·(King, J.), certain statements made by George to a State Police officer were received in evidence, as binding upon George only. I am of the opinion now, as I `was of the impression at the time of trial, that the decision on the demurrer was sound, and the law good, hence no judgment would run against George, an unemancipated minor son, by his. father's estate. (See memorandum on demurrer, 9 Conn. Sup. 182). Consequently, the evidence concerning the admissions has not been considered in passing upon the question of negligence.

The road, at the point of accident, was 36 feet 2 inches. wide and there were no shoulders. It was on a down grade. The car had mounted the curb 47 feet prior to the impact ·with the tree and there were two wheel marks leading from the mark on the curb to the tree. The whole front of the car was damaged, as shown in the exhibits, and there was. no evidence of other traffic on the road. The operator did. not have the car under proper control. Notwithstanding, there must exist some legal basis for charging the defendant, Josephine Shaker, who married a man named Choker. So far as the business in hand was concerned, the boy was his. father's agent, under his control, and legally his acts are chargeable to the father, so the boy's negligence would be imputable to the father.

## II.

Under the facts it is claimed that the boy was his sister's. agent under the family car doctrine. It is conceivable that he could be the agent of both his father and his sister.

Both parties, in their briefs, argued at length the applicability of the family car doctrine. It would appear, however, that the real troublesome question was overlooked in the effort to demonstrate that the family car doctrine either should or should not apply. I find no difficulty in finding the car to be a family car for the purposes of the business. Simply because it was owned by a sister instead of the head ·of the family would not be controlling. While it was used in the father's business, it was done with Josephine's permission. In such a situation the controlling element is the scope of the intended use of the car, rather than the mere fact that

it is owned and maintained by any particular person. *Durso vs. A. D. Cozzolino, Inc.,* 128 Conn. 24, 30.

Moreover, in that very case our court specifically fails to distinguish between the identity of the ownership as long as the use is a family one, and uses this language: "But if a car is maintained for the general use of a family, we see no valid distinction between a situation where it is owned and maintained *by a member of the family* and one where, as here, it is owned and maintained by a family corporation for the use of the family of its managing head and one of the principal stockholders." (Italics added.) *Durso vs. A. D. Cozzolino, Inc., supra,* p. 30.

And again, in the same case, our court said (p. 30): "The reason underlying the doctrine exists no less in such a situation than in one where title to 'the car is in a member of the family."

## CONCLUSIONS.

The real difficulty seems to be that the son's negligence, even though an agent of his sister, might be imputable to the father under that doctrine.

Most of the cases arise from the necessity of a third-party plaintiff asserting the doctrine to recover. So far as plaintiff is concerned such a necessity was felt. But is such a plaintiff's position satisfactorily advantaged even after establishing that the car was a family car? I think not.

In its facts the case comes close to possessing the elements essential to a joint enterprise which "include at least a common purpose, a community of interest in the object of the enterprise, joint possession of the vehicle, and equal right and authority to control its operation." *Weller vs. Fish Transport Co., Inc.,* 123 Conn. 49, 54.

Apart from joint enterprise the car was bought by the sister, Josephine, to be operated by the members of the family, under the control of the father, for the father's business, conducted for the benefit of the family, living together as an entity. One of the uses for which it was intended was just such a use as it was being put to when the father lost his life.

A third-party occupant of the car could have sued the father and the daughter, in a similar situation, and the son's negligence would bring into being the responding factor cre-

ating liability as to father and daughter. If the son's negli-
gence would accomplish liability as to a third party why is
not the son's negligence imputable to the father as against
the sister? As to the sister there could be no liability were
the car not engaged in the father's business as a family use
car in the business. The relationship of the parties, the use
which made it a family car, and the particular business in
which the father was on that day engaged, all point to the
conclusion that the boy's negligence should be imputed to
the father.

A reference to the family car doctrine seems to support
such a conclusion.

"It is generally accepted as a necessary rule of public policy
and social justice....But theoretically as well as practically,
the master's responsibility for the negligence of his servant
extends far beyond his actual or possible control over the
conduct of the servant. It rests on the broader ground that
every man who prefers to manage his affairs through others,
remains bound to so manage them that *third persons* are not
injured by any breach of legal duty on the part of such others
while they are engaged upon his business and within the scope
of their authority." (Italics added.) *Wolf vs. Sulik*, 93
Conn. 431, 436. *See, also, Stickney vs. Epstein*, 100 id. 170,
177, 178.

The case at bar seems to be distinguishable from the case
of *Weller vs. Fish Transport Co., Inc., supra,* and *Nichols vs.
Nichols,* 126 Conn. 614. Certainly if the rule is based on
"public policy and social justice" and extensions of the rule
of *respondeat superior* may be desirable as new situations arise,
such an extension as is sought here would bring about a
defeat of justice, or at least allow a perversion of the doctrine
to accomplish a result which extensions of the *respondeat
superior* rule by means of the family car doctrine were not
intended to aid.

Judgment for the defendants.