KRISTINE COGAN *v.* CHASE MANHATTAN
AUTO FINANCIAL CORPORATION
(SC 17256)

Sullivan, C. J., and Borden, Norcott, Vertefeuille and Zarella, Js.

Argued May 17—officially released October 11, 2005

*William F. Gallagher*, with whom, on the brief, were *Hugh D. Hughes* and *Charles B. Angelo*, for the appellant (plaintiff).

*James E. O'Donnell*, for the appellee (defendant).

*Opinion*

ZARELLA, J. The plaintiff, Kristine Cogan, appeals, following our grant of certification,[1] from the judgment of the Appellate Court affirming the trial court's judgment rendered in favor of the defendant, Chase Manhattan Auto Financial Corporation. On appeal, the plaintiff claims that the Appellate Court improperly concluded that her action was barred by the applicable statute

---

[1] We granted the plaintiff's petition for certification to appeal limited to the following question: "Did the Appellate Court properly determine that General Statutes § 52-593 did not apply to save the plaintiff's cause of action?" *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 271 Conn. 913, 859 A.2d 568 (2004).

of limitations and could not be saved under General Statutes § 52-593,[2] which permits a new action to be filed beyond the applicable statute of limitations period when a plaintiff has failed to obtain judgment in a prior action for failure to name the "right person" as defendant. We affirm the judgment of the Appellate Court.

The following facts and procedural history are relevant to our resolution of this appeal. In June, 1999, the plaintiff commenced an action against Shannon L. McKernan and McKernan's stepfather, Richard Plasky, for personal injuries that she allegedly had sustained in an automobile accident on September 12, 1997. The plaintiff alleged that the vehicle in which she was a passenger was struck by a vehicle operated by McKernan as Plasky's "agent, servant and/or employee under the family car doctrine with full authority to drive said vehicle." On February 3, 2000, the plaintiff released McKernan and Plasky from all claims arising from the accident in consideration of $100,000, the upper limit of liability coverage available under Plasky's automobile insurance policy. On February, 14, 2000, the plaintiff withdrew her complaint because the dispute had been "resolved" by a "[d]iscussion of [the] [p]arties on [t]heir [o]wn."

In a letter dated April 19, 2000, Plasky's attorney advised the plaintiff of his recent discovery that Plasky, who never had been asked about ownership of the vehicle prior to the withdrawal of the plaintiff's complaint,[3] was not the owner of the vehicle that McKernan

[2] General Statutes § 52-593 provides in relevant part: "When a plaintiff in any civil action has failed to obtain judgment by reason of failure to name the right person as defendant therein, the plaintiff may bring a new action and the statute of limitations shall not be a bar thereto if service of process in the new action is made within one year after the termination of the original action. . . ."

[3] The police report noted, however, that Plasky was the owner of the vehicle.

was driving at the time of the accident. Rather, Plasky had leased the vehicle from the defendant. The plaintiff thereafter commenced this action against the defendant on December 4, 2000, pursuant to General Statutes (Rev. to 1997) § 14-154a, which provides in relevant part that the owner of a leased motor vehicle "shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so . . . leased . . . ."[4]

On October 26, 2002, the defendant filed a motion for summary judgment, claiming that the plaintiff's action was barred by General Statutes § 52-584[5] because it was brought more than two years after the date of the accident. The defendant also claimed that § 52-593 did not save the action because the prior action had not been "terminated as a result of a judgment against the plaintiff for failure to name the correct defendant, but instead the plaintiff voluntarily withdrew the prior claim and collected the full amount of insurance available to the [parties] who she . . . [had] sued."

In its memorandum of decision on the motion, the trial court noted the plaintiff's concession that if the complaint could not be saved by § 52-593, her action against the defendant would be time barred by § 52-584. The court then concluded that the prior action against McKernan and Plasky "did not result in a judg-

---

[4] General Statutes (Rev. to 1997) § 14-154a provides: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."

[5] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act . . . complained of . . . ."

ment of any sort. Rather, that action was withdrawn on February 14, 2000. Under these circumstances, [the plaintiff] cannot be said to have 'failed to obtain judgment' in [the prior action]." The court further explained that the plaintiff's failure to obtain judgment had resulted not from naming the wrong defendant but from her settlement with McKernan and Plasky. The court finally concluded that the plaintiff had named the proper defendant for the legal theory alleged in her complaint. The court thus granted the defendant's motion for summary judgment and rendered judgment thereon in favor of the defendant.

On appeal, the Appellate Court affirmed the trial court's judgment on the ground that the plaintiff had not obtained judgment in the original action because she withdrew her complaint in favor of settlement. See *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 83 Conn. App. 843, 847, 851 A.2d 407 (2004). The Appellate Court concluded that voluntary withdrawal "is not equivalent to a judgment." Id., citing *Billerback* v. *Cerminara*, 72 Conn. App. 302, 308, 805 A.2d 757 (2002). The Appellate Court also determined that the plaintiff had not named the wrong defendant in the original action because of a reasonable and honest mistake of fact regarding the identity of the responsible party. See *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 847, citing *Isidro* v. *State*, 62 Conn. App. 545, 549–50, 771 A.2d 257 (2001). This appeal followed.

The plaintiff claims that the present action is saved by § 52-593 because the withdrawal of her original complaint qualifies as a failure to obtain judgment. She notes that the statute does not expressly require judgment in favor of the defendant but merely requires failure by the plaintiff to obtain judgment in her favor. According to the plaintiff, a judgment need not be rendered in the first action prior to application of the savings statute. She also contends that she was forced to settle and to

withdraw the original action because the only available insurance was that afforded under Plasky's policy, and the $100,000 coverage under that policy was the maximum that she could obtain in that action. She therefore asserts that, to the extent that she was unable to recover more than $100,000, which, she claims, was less than the "full value of the case," the original action was unsuccessful on the basis of her failure to name the right defendant.

The defendant responds that withdrawal following settlement is not the same as failure to obtain judgment, even if the potential exists for a greater recovery, because the plaintiff's recovery in the first action represents a partially successful judgment. According to the defendant, failure to obtain judgment under § 52-593 means "a complete failure to obtain any recovery by way of judgment or settlement." The defendant also argues that a plaintiff has not failed to name the right defendant when the named defendant "pays money to avoid the risk of litigation, whether judgment enters or not. The existence of some other entity for whom theoretical liability also may attach is immaterial." We agree with the defendant that the plaintiff's claim must fail.

As a preliminary matter, we set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.)

*Rocco* v. *Garrison,* 268 Conn. 541, 548, 848 A.2d 352 (2004). "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Greenwich Hospital* v. *Gavin,* 265 Conn. 511, 519, 829 A.2d 810 (2003). "Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Rocco* v. *Garrison,* supra, 548–49.

The issue before this court involves a question of statutory interpretation that also requires our plenary review. See, e.g., *Parrot* v. *Guardian Life Ins. Co. of America,* 273 Conn. 12, 18, 866 A.2d 1273 (2005). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citations omitted; internal quotation marks omitted.) Id., 18–19. When a statute is not plain and unambiguous, we also look for interpretive guidance to "the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal

quotation marks omitted.) *State* v. *Lutters*, 270 Conn. 198, 205–206, 853 A.2d 434 (2004).

We begin our analysis by examining the language of the statute. General Statutes § 52-593 provides in relevant part: "When a plaintiff in any civil action has failed to obtain judgment by reason of failure to name the right person as defendant therein, the plaintiff may bring a new action and the statute of limitations shall not be a bar thereto if service of process in the new action is made within one year after the termination of the original action. . . ." The savings provision therefore applies if the plaintiff has "failed to obtain judgment" in the original action on the basis of her "failure to name the right person as defendant . . . ." General Statutes § 52-593.

Our examination of the language of the statute and its relationship to other statutes does not reveal a meaning that is plain and unambiguous.[6] We therefore look for interpretive guidance beyond the statutory scheme.[7]

The plaintiff first argues that Plasky was not the "right" defendant because he was not the owner of the vehicle that McKernan was driving at the time of the accident. We disagree.

Under Connecticut law, a "right person," as that term is used in § 52-593, is one who, as a matter of *fact*, is a "proper defendant for the legal theory alleged." *Kronberg* v. *Peacock*, 67 Conn. App. 668, 673, 789 A.2d 510, cert. denied, 260 Conn. 902, 793 A.2d 1089 (2002); see, e.g., *Whipple* v. *Fardig*, 109 Conn. 460, 465, 146 A. 847 (1929) (defendant named as "principal or master" of person driving vehicle under theory of agency deemed

---

[6] Specifically, the statute is not clear as to whether the term "right person" means *any* right person or *all* right persons from whom the plaintiff can recover.

[7] We note that the legislative history of the statute is limited and fails to illuminate our inquiry.

"wrong defendant" for purposes of savings statute after evidence adduced at trial revealed that defendant did not own vehicle and thus could not be sued under theory alleged). In the action against McKernan and Plasky, the plaintiff did not allege that Plasky was the owner of the vehicle that McKernan was driving, but, rather, that McKernan "was operating the vehicle of . . . Plasky . . . as his agent, servant and/or employee under the family car doctrine with full authority to drive said vehicle."

The family car doctrine is a common-law rule providing that, "when a motor-car is maintained by the paterfamilias for the general use and convenience of his family, he is liable for the negligence of a member of the family having general authority to drive it, while the car is being used as a family car . . . ." *Stickney* v. *Epstein*, 100 Conn. 170, 178–79, 123 A. 1 (1923). As we explained in the seminal case of *Wolf* v. *Sulik*, 93 Conn. 431, 106 A. 443 (1919), the family car doctrine is grounded in the principle that "every man who prefers to manage his affairs through others . . . remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority."[8] Id., 436–37.

---

[8] In deciding *Wolf*, which was this court's first encounter with the family car doctrine, we relied in part on a statute that made "all bailors of . . . vehicles which are . . . operated on the highways, liable for the negligence of their bailees, to the same extent that a master is liable for the negligence of his servant." *Wolf* v. *Sulik*, supra, 93 Conn. 434; see General Statutes (1918 Rev.) § 1572. While § 1572 was repealed shortly after we decided *Wolf*, we adopted much of *Wolf*'s logic and conclusions verbatim four years later in *Stickney* v. *Epstein*, supra, 100 Conn. 176–79. As we decided *Wolf* in partial reliance on § 1572, *Stickney* represents our first articulation of the common-law family car doctrine. *Stickney*'s substantial adoption of *Wolf*, however, leaves no doubt that *Wolf* remains an authoritative source of the family car doctrine under the common law.

At the time of the accident, Plasky was McKernan's stepfather, occupied the same household as McKernan[9] and furnished a car for his family's general use through a lease with the defendant. In addition, there is no suggestion that McKernan did not have permission to use the car on the date of the accident.[10] For these reasons, Plasky met the essential factual prerequisites for a properly named defendant under the family car doctrine as the plaintiff alleged in her complaint. If Plasky had not been a proper defendant, it is highly unlikely that the plaintiff would have obtained the maximum potential recovery of $100,000 available under Plasky's insurance policy. Thus, Plasky was the "right" defendant within the meaning of § 52-593.

The plaintiff also argues that Plasky was not the "right" defendant because she could not recover the "full value of the case" under his insurance policy, and, therefore, that § 52-593 saves her present action against the defendant. We disagree.

The fact that the complaint in the plaintiff's original action failed to name all potentially liable defendants is immaterial. On this point, we find the Appellate Court's decision in *Isidro* instructive. In that case, the plaintiff, Miriam Isidro, named the proper defendant, a police officer, as a matter of fact, but the trial court subsequently concluded that he was immune from liability. See *Isidro* v. *State*, supra, 62 Conn. App. 547, 550. Thereafter, the plaintiff brought a second action against the state. Id., 547. The state filed a motion for summary

---

[9] For purposes of the family car doctrine, a "family group is not necessarily confined to those of [the vehicle owner's] own kindred; it includes all those members of the collective body of persons living in [the owner's] household for whose convenience the car is actually maintained and who have general authority to use it." *Smart* v. *Bissonette*, 106 Conn. 447, 452, 138 A. 365 (1927).

[10] The plaintiff indeed acknowledges that Plasky "may be a correct defendant as someone who maintains the [McKernan] car and has control over it . . . ."

judgment, claiming that the plaintiff's action was time barred. Id., 547–48. The plaintiff argued that § 52-593 should be interpreted broadly to encompass situations in which the plaintiff in an original action names the wrong defendant by virtue of a legal mistake as to the identity of the defendant rather than merely by virtue of a factual mistake. Id., 549. The Appellate Court declared, however, that "following the plaintiff's logic would undermine the statute of limitations because a plaintiff could unilaterally extend the limitation period simply by filing an action against a defendant who could not be liable based on [the] legal theory [alleged]." Id., 550–51. Similarly, to allow a plaintiff to file successive complaints under § 52-593 naming different defendants, all of whom were proper, thereby permitting the plaintiff to take the proverbial second, third or even fourth bite of the apple, could lead to unrestrained filings in cases with multiple defendants and open the door to endless litigation. "To allow [such an] action . . . would defeat the basic purpose of the public policy that is inherent in statutes of limitation[s], i.e., to promote finality in the litigation process." (Internal quotation marks omitted.) Id., 551. Accordingly, we conclude that the plaintiff's failure to name *all* of the defendants from whom she could have recovered in her original action does not constitute a "failure to name the right person as defendant" within the meaning of General Statutes § 52-593.

Furthermore, the record makes clear that the plaintiff's original action was terminated because she settled with McKernan and Plasky. The document by which the plaintiff released McKernan and Plasky from her claims against them explicitly provides that the release was effectuated "for and in consideration of the sum of . . . [$100,000] . . . [to the plaintiff] in hand paid by . . . McKernan and . . . Plasky . . . ." Moreover, the plaintiff acknowledges that the reason that she with-

drew the complaint in her original action was that she settled with McKernan and Plasky.[11] Indeed, the plaintiff's withdrawal of her complaint could not have been premised on the fact that Plasky was not the owner of the vehicle because she *did not know at that time* that Plasky was not the owner. Accordingly, we cannot conclude that the plaintiff "failed to obtain judgment *by reason of* fail[ing] to name the right person as defendant . . . ." (Emphasis added.) General Statutes § 52-593; cf. *Perzanowski* v. *New Britain*, 183 Conn. 504, 505, 507, 440 A.2d 763 (1981) (declining to apply § 52-593 to save time barred action where plaintiff failed to obtain judgment in his original action because one defendant was immune from liability and jury returned verdict in favor of other defendants); *Isidro* v. *State*, supra, 62 Conn. App. 550 (declining to apply § 52-593 to save time barred action where plaintiff's original action "was dismissed because . . . the defendant was immune from liability"). We conclude that the Appellate Court properly determined that § 52-593 did not save the plaintiff's action.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[11] The plaintiff, however, characterizes it not as a settlement but as a partial failure to obtain judgment for the full value of her claims.