ARLINO PERFETTO v. WILLIAM H. WESSON ET AL.

SUPERIOR COURT                                    FILE No. 18075
          NEW HAVEN COUNTY AT WATERBURY

Memorandum filed July 13, 1950.

*Summa & Summa,* of Waterbury, for the Plaintiff and *Pull-man & Comley,* of Bridgeport, for Co-plaintiff, Oil Transport Company. .

*Hoyt & Mulvihill,* of New Haven, for the Defendants.

CORNELL, J. Plaintiff's intestate sustained fatal injuries while riding as a guest-passenger on June 26, 1948, in a Ply-mouth coupe owned by defendant Frances C. Wesson and then

operated by her husband, defendant William H. Wesson. Immediately before the fatality occurred the car had been proceeding in a westerly direction on Wolcott Street in the city of Waterbury. At a point between 400 and 500 yards east of the intersection of Niagara Street and Wolcott Street (where Manor Street intersects Wolcott Street) plaintiff's intestate who was under the influence of intoxicating liquor and was seated on the defendant driver's right changed his position so that his head lay toward the door on his right and his feet came into a position under said driver's right leg. As the car was approaching close to or passing the intersection of Manor Street the defendant driver leaned over and with his right hand attempted to remove the intestate's feet from the position described. From that point Wolcott Street assumes an inclining grade and falls into a curve as it continues in a westerly direction. When the defendant driver was attempting to extricate his passenger's feet he took his eyes off the road ahead. Of what happened thereafter he claims to have no recollection. However, the evidence establishes that the car failed to make the curve mentioned and after traveling about 400 to 500 yards, moved to the opposite side of the road where it struck a culvert and, continuing on its course out of control, collided with a telegraph pole (which it severed near its base), crossed Niagara Street, then went through a meshed wire fence surrounding a house at the southwest corner of Wolcott and Niagara Streets, overturned and came to rest on the lawn there. Plaintiff's intestate was pinned under the vehicle and suffered from asphyxia caused by compression of his chest due to the pressure of the vehicle as he lay on the ground with the car in the position described. He was dead on arrival at the hospital where he was received a few minutes later.

About a mile east of Niagara Street the speed at which the car was moving was 40 to 45 miles an hour which was in violation of the maximum denoted by a sign applying to the area. While there is no evidence of the speed at which the car was traveling when the defendant driver leaned over to remove the intestate's feet or legs from under his own right leg, the defendant driver testified that he has no recollection of decreasing it below 40 to 45 miles an hour. The physical evidence attending the course of the vehicle after it became out of control and the damage inflicted by it in its subsequent course leads to the conclusion that in any event the speed at which the car was operated at the place in question and under the surrounding conditions was so excessive as to constitute negligence, considering, particularly, the maneuver in which the defendant driver engaged. It is

found that the car went out of control as the result of the speed at which it was being operated, combined with failure to exercise a reasonably careful lookout and control of its speed and movements, each of which proximately contributed to its career as noted and, thereby, caused the injuries from which plaintiff's intestate died.

Defendant's special defense of contributory negligence cannot be sustained. This reads as follows: "The plaintiff's decedent was guilty of contributory negligence . . . in that while the defendant, William H. Wesson, was operating the automobile, plaintiff's decedent interfered with the operation of the said automobile . . . by brushing up against the said William H. Wesson and entwining his legs with the legs of the defendant William H. Wesson which caused the automobile to go out of control." There is no evidence that the deceased "entwined his legs with those of" the driver of the car or otherwise by any sudden movement on his part affected the defendant driver's control of it or caused him to lose control of its movements or direction. On the contrary the defendant driver testified that the deceased had placed his feet under his right leg the foot of which rested on the accelerator of the car but that he had no recollection that in the position that they occupied, there was any interference with the movement of his right foot or leg or otherwise in the operation of the vehicle. On the contrary, the inference is justified that the defendant driver's action in leaning over to attempt to displace the deceased's feet was to eliminate a prospective source of danger, rather than the response to one then presently existing. The determination is that the defendants have failed to prove that the deceased was guilty of contributory negligence in the manner alleged.

Plaintiff alleges that the car involved "was maintained by the defendant Frances C. Wesson as a family car for the use and convenience of the members of her family and the said defendant William H. Wesson at said time and place was driving said automobile within his general authority to operate it." It seems to be conceded that the car was maintained for the benefit of the family and that the driver at the time of the collision was her husband. The defendants seriously dispute, however, that the so-called family car doctrine applies because, it is contended, the defendant husband was not using it "within his general authority to operate it." On this phase of the matter the following facts are found. The defendant driver was an officer and employee of Oil Transport, Inc., which employed from fourteen to sixteen

drivers of trucks used for the transport of oil for hire. On June 26, 1948, the defendant driver had taken his wife's car to the office of the concern. On that evening a meeting and dinner of the employees of the company had been arranged for. This was a third of a series, the purpose of which was to inculcate safety ideas in the truck drivers, in the hope of reducing frequency of accidents and promoting cooperation and congeniality among the corporation's workers. All drivers were requested to attend and on the evening in question all were there. The arrangements for the affair, inclusive of the dinner, were made by the defendant driver who was an officer of the corporation and paid for by the company. In the early evening, the defendant driver permitted the plaintiff's intestate to drive the defendant wife's car to his home to change his clothes in preparation for attending the affair and when, having done so, the deceased returned to the corporation's office with it, he accompanied the defendant driver in it to the place of the meeting. The gas and oil consumed on this trip by the defendant owner's car was paid for by the corporation. The defendant driver owns stock in Oil Transport, Inc., and is an officer thereof. His father is president of it. It is a "closed or family" corporation.

Upon these facts, the defendants claim that while the car was owned and maintained by the defendant wife for the use of the family, nevertheless she is not liable for her husband's negligence on the occasion in question because at that time it was not being used for such purpose. This contention appears to be based on the common-law rule of master and servant under which it is necessary to establish that the operator of the car was the agent or servant of the owner and that at the time of causing injury to another was acting within the scope of his authority and not on a "frolic of his own." *Slattery* v. *O'Meara,* 120 Conn. 465, 470. The family car doctrine applies where the member of the family who is using the car is carrying out the very purpose for which the owner maintained it. *Slattery* v. *O'Meara,* supra, 469. It is, in fact, an improvisation invented by the courts, "[I]n the nature of an exception to the general principle that one who permits another to use his car does not thereby become liable for the negligent conduct of the other, unless in driving it he is pursuing an agency or employment for the owner." *Durso* v. *A. D. Cozzolino, Inc.,* 128 Conn. 24, 29. The basis of the family car doctrine is that of public policy. It is not a branch of the law of agency or master and servant but only in analogy thereto. *Durso* case, supra. In that sense, a vital element in determining the liability of one who owns or maintains a so-called family

car "is the scope of the intended use of the car," which is delineated by the "very purpose for which the owner maintained" the car. *Dibble* v. *Wolff*, 135 Conn. 428, 434. While the courts among the several states differ in detail in the manner and to the extent to which the doctrine is applied, the criterion of the scope to be attributed to it is whether or not when injuries occur to the person or property of another, the car is being operated "for the pleasure or convenience of the family or a member of it." *O'Keefe* v. *Fitzgerald*, 106 Conn. 294, 298.

Defendants predicate their contention that the defendant operator was not using the car within the scope of the family car doctrine at the time the plaintiff's intestate was mortally injured because the affair to which he drove the vehicle and from which he was returning when the accident happened, was not his, personally, but that of the concern of which he was an officer and by which he, as well as plaintiff's intestate, was employed, which also paid the expenses of the meeting and dinner and the cost of the gasoline and oil used in the trip. These circumstances, defendants insist, evidence a diversion from the use of the car from the driver's personal pleasure or convenience to one for that of Oil Transport, Inc., in connection with a project of the latter relating to its business. While authority may be found in other jurisdictions which support or tend to sustain this contention, the court knows of none in this state which pointedly affirms the view stated. What the situation might have been had the defendant driver given the use of the car to Oil Transport, Inc., either as bailee or otherwise and that concern provided for its operation by one of its other employees, there is no occasion to inquire. The attendance at a function by one having the use of a family car is obviously on an errand of pleasure or convenience. The fact that the affair is given by one's employer or a corporation of which he is an officer and is closely related to the business conducted by it, is consistent with the use of the vehicle as a family car and impotent to change its status as such or the relation appertaining to its use as between the owner of it and the member of the family who drives it. It is not the kind of use made of the car but the fact that the use made of it is by a member of the family and for his own personal use and convenience which is determinative of whether or not it is within the scope of the use authorized. Whether the journey to the inn was a matter of pleasure or duty and the use of the car a convenience in performing it, seems unimportant. The car was furnished for the pleasure and convenience of the defendant driver and he was using it at the time for either of these purposes. At common

law when a pater familias maintains an automobile for the pleasure, use and convenience of his family to use it for such purpose, he by so doing makes such pleasure or convenient uses his affair and constitutes members of the family so operating the car his agents engaged in the prosecution of his affairs. *Stickney* v. *Epstein,* 100 Conn. 170, 179. It is the conclusion that when the plaintiff's intestate was fatally injured, the defendant driver was operating the same within the scope of the use conferred on him as that of the use of a family car, conferred by its maintenance as such by the defendant owner, Frances C. Wesson and the latter is liable for her husband's negligence.

Oil Transport, Inc. was permitted to intervene as a party plaintiff upon motion addressed to the court. No complaint has been filed by it, but the parties have mutually assumed that a copy of a proposed intervening complaint attached to the motion suffices for the purpose. Whether such a conclusion may be justified it is unnecessary to decide in view of the determination of this phase of the case below stated. For a possible analogy, however, see *Motiejaitis* v. *Johnson,* 117 Conn. 631, 638. Treating the intervening complaint as properly filed in accordance with the provisions of General Statutes, § 7425, as the parties have, there is neither evidence nor proper allegation to support a recovery in this action under it. The office of the statute is available to an employer, only, who has paid or, by award, has become obligated to make payments under the Workmen's Compensation Act. There is no allegation that the intervening plaintiff has either paid or become obligated to pay any compensation to the intestate's widow, nor any evidence of such purport either submitted or offered. In fact, the prayer for relief merely asks that any damages awarded the principal plaintiff be so paid and apportioned as to reimburse the intervening plaintiff "for any amounts which it may become obliged to pay the decedent's widow . . . and for reasonable attorney's fees and its costs." There is no evidence that any award of Workmen's Compensation has ever been made, without which an employer is not eligible to the enjoyment of the benefits of § 7425.

Judgment may enter that plaintiff Arlino Perfetto as administratrix on the estate of John J. Perfetto recover of the defendants William H. Wesson and Frances C. Wesson in the sum of seventeen thousand five hundred dollars ($17,500) damages. Judgment against the intervening plaintiff, Oil Transport, Inc.