CECELIA LEVY v. JOSEPH SENOFONTE ET AL.

CIRCUIT COURT           FOURTEENTH CIRCUIT
FILE No. CV 14-614-2769

Memorandum filed August 19, 1964

*Edmund T. Curran*, of Hartford, for the plaintiff.

*John J. Mahon*, of Hartford, for the defendants.

RUBINOW, J. On September 8, 1959, at about noon, the plaintiff's 1959 Buick was being operated in a northerly direction on Groton Street in Old Lyme by the plaintiff's daughter, Norma Tanguay. The plaintiff did not know how to drive, and, since the death of her husband, the Buick had been driven

customarily by Mrs. Tanguay. At this time, the plaintiff and Mrs. Tanguay, with Mrs. Tanguay's two small children, were vacationing for several days in Old Lyme, occupying a cottage owned by Mrs. Tanguay's father-in-law. On this particular occasion, Mrs. Tanguay, unaccompanied by the plaintiff, was returning from the beach, where, in preparation for the afternoon there, she had brought from the cottage miscellaneous beach equipment for the use of the occupants of the cottage, including the plaintiff.

As Mrs. Tanguay was thus proceeding northerly on Groton Street, she entered an intersection formed by Groton Street and A Street, the latter intersecting Groton Street at right angles. At this point, the intersection was about eighteen feet wide. When the rear portion of the Buick was about twelve feet into the intersection, the right rear fender and bumper of the Buick were struck by the front of a 1957 Chevrolet being driven westerly on A Street by the defendant Joseph Senofonte, as agent-servant of the defendant Lucy Senofonte. As a result of the impact, the Buick was spun around, so that it came to rest facing in a southerly direction, with its front end northerly of the northerly line of A Street.

In this action, the plaintiff seeks to recover for the property damage to the Buick, alleging that the damage resulted from the negligence of the defendants. The defendants deny their negligence and assert that the plaintiff cannot recover, in any event, because Mrs. Tanguay was negligent and her negligence is to be imputed to the plaintiff as the owner of a family car.

The first issue to be considered, then, is that of the alleged negligence of the operators. Both operators were familiar with the intersection, and both

knew that the intersection was a hazardous one because of a high hedge, on the southerly side of A Street, that hid northbound traffic on Groton Street from westbound traffic on A Street. This hedge extended to about three feet from the beginning of the intersection, so that the utmost watchfulness and caution were due from both operators. In spite of their knowledge of the hazards of the intersection, neither operator sounded his horn. Moreover, Mrs. Tanguay was not keeping a careful lookout, for she did not see the Chevrolet before the impact, even though the Chevrolet was so close to the intersection that Mrs. Tanguay should have seen it when she reached the perimeter of the intersection. Furthermore, she failed to grant the statutory right of way to Senofonte.[1] Senofonte, however, was operating the Chevrolet at a speed (as reflected in the fact that the Buick was spun around by the impact) that was clearly greater than reasonable at a "blind" intersection of this kind. Even his admitted speed of twenty miles per hour, equal to twenty-nine feet per second, was excessive, for at that speed, after making allowances for "reaction time," he would not have had enough braking distance to stop short of the intersection, even if he attempted to stop as soon as he was in a position to see northbound traffic. Although he had a statutory right of way, he was still bound to exercise the care of a reasonably prudent person (*Carlin* v. *Haas,* 126 Conn. 8, 14; *Kleps* v. *Dworkin,* 127 Conn. 648, 652), and at that blind intersection a reasonably prudent person would proceed slowly enough to be able to stop, if necessary to do so, before proceeding into the intersection. Any lower standard of care at an intersection of this kind would, in effect, relieve a westbound operator of the duty of

[1] General Statutes § 14-245. That Mrs. Tanguay did not see Senofonte does not excuse her from her statutory duty to grant the right of way. *Crowley* v. *Dix,* 136 Conn. 97, 103.

exercising due care in the exercise of his right of way. The court finds that both operators were negligent and that the negligence of each was a substantial factor in causing the damage to the Buick.

This finding brings the court to the second of the defendants' defenses, namely that the contributory negligence of Mrs. Tanguay bars a recovery by the plaintiff. The validity of this claim depends upon the validity of a claim of fact and a claim of law. The claim of fact is that the Buick being operated by Mrs. Tanguay was a family car, and the claim of law is that the negligence of Mrs. Tanguay, as the operator of a family car, is imputable to the plaintiff.

Taking up first the claim that the Buick was being operated as a family car, the court must at the outset determine whether the family car statute (General Statutes § 52-182) applies here.[2] It is not the purpose of this statute to create new rights or duties; its purpose is to formulate "a detail of procedure, merely." *Baker* v. *Paradiso,* 117 Conn. 539, 545. This "detail of procedure," first, creates a presumption, and, second, specifies that "the defendant" shall have the burden of rebutting it. Read literally, the statute could be construed as having two independent provisions, one creating the family car "agency" presumption and the other allocating the burden of rebutting that presumption. That construction, however, in the present case, would require that the court ignore the burden of proof provision of the statute, for if given effect, that provision would require the court to impose upon "the defendant" the burden of rebutting the same

[2] The other presumption of agency statute, § 52-183, clearly applies only to cases where damages are sought from the owner and, therefore, does not apply to the present case, where damages are sought by the owner.

presumption that the other provision of the statute created in his favor. Hence, treating the statute as having two independent provisions makes an absurdity of the statute. The court must conclude, therefore, that the statute can logically be read only as an indivisible unit, and that, accordingly, the statute applies only to cases where a plaintiff invokes the statute to assist a recovery against a defendant, and not to cases like the instant case, where a defendant invokes the statute to prevent a recovery by a plaintiff.

That the family car statute does not apply to the present case means, then, that the statutory presumption is not available to assist the defendants. They claim, however, that, even without any assistance from the statute, they have established that the plaintiff's Buick was a "family car," a phrase defined in the first family car case in this state, *Wolf* v. *Sulik,* 93 Conn. 431, 436, as "a motor-car . . . maintained . . . for the general use and convenience of . . . [the owner's] family." The plaintiff, on the other hand, claims that the word "family" in this definition means "household," and that the Buick was not a family car because Mrs. Tanguay and the plaintiff lived in separate households. It is true that, in the family car doctrine, the phrase "the owner's family" has been held to mean a "member of the . . . [owner's] immediate household." Prosser, Torts (3d Ed.) p. 497. For example, in *Smart* v. *Bissonette,* 106 Conn. 447, the court applied the family car doctrine where the operator was a nonrelative housekeeper in the owner's household. On the other hand, in *Dibble* v. *Wolff,* 135 Conn. 428, the court had presented to it the converse of *Smart* v. *Bissonette,* i.e. a case where the operator was a relative not living in the owner's household, and the court "assumed," but did not hold, that the operator was not a member of the "fam-

ily."[3] In the instant case, it is unnecessary to determine whether the family car doctrine applies if the operator and owner do not live in the same household, for, although Mrs. Tanguay and the plaintiff lived apart during the rest of the year, they were living together while at Old Lyme and were part of the same household, even though only temporarily, during this time. This suffices to make Mrs. Tanguay at that time a member of her mother's "family."

The definition in *Wolf* v. *Sulik,* supra, also requires proof that the motor vehicle is maintained "for the general use and convenience of . . . [the owner's] family." On this issue, one of the criteria the court may properly consider is "the frequency . . . of operation of the automobile by a member . . . of the owner's family." *McCaughey* v. *Smiddy,* 109 Conn. 417, 420. The evidence shows that during her vacation at Old Lyme and during the rest of the year, Mrs. Tanguay was the principal operator of the Buick, although, on occasion, she used it for transportation for her mother. Further, Mrs. Tanguay even kept the Buick at her home in New Britain for extended periods of time, although her mother was living in Plainville. In the light of this evidence, the court could hardly come to any conclusion other than that the Buick was maintained, primarily although not solely, for the use and convenience of Mrs. Tanguay.

The plaintiff claims that, notwithstanding the foregoing evidence that the Buick was a family car, the evidence fails to establish that Mrs. Tanguay had "general authority" to operate it. This claim is based on the fact that Mrs. Tanguay customarily informed her mother of the contemplated use of the

---

[3] A Superior Court decision holds that the operator must be a member of the owner's household to be part of the "family." *Pietrykowski* v. *Rodek,* 16 Conn. Sup. 192.

Buick and thereby (as the plaintiff claims) impliedly obtained "special permission" each time she used it. The plaintiff claims that this pattern of conduct falls within the rule that such special permission negates a general authority. *O'Keefe* v. *Fitzgerald,* 106 Conn. 294, 300.[4] It is unnecessary, however, to consider this claim, for whatever may have been the course of conduct of the parties when they were not at Old Lyme, at Old Lyme the plaintiff placed the Buick at the general disposal of the occupants of the cottage,[5] and at Old Lyme Mrs. Tanguay used the Buick without customarily informing her mother of the contemplated use. Neither Mrs. Tanguay nor the plaintiff claimed that Mrs. Tanguay did not have permission, express or implied, to operate the Buick on September 8. The court finds that at Old Lyme Mrs. Tanguay had a general authority to operate the Buick as the plaintiff's family car and that she was so operating it on September 8.

Since Mrs. Tanguay was negligent and since she was operating the Buick as a family car within the scope of her general authority, it becomes necessary for the court to consider the defendants' claim that Mrs. Tanguay's negligence is to be imputed to the plaintiff. This claim is based upon the much-discussed and much-criticized fiction of "imputed contributory negligence."[6] This fiction has not found favor in this state. Thus, the Supreme Court of Errors refused to apply the fiction where the defendant sought to impute the contributory negli-

---

[4] See also *Costanzo* v. *Sturgill,* 145 Conn. 92, 95.

[5] The family car doctrine applies even though the plaintiff was not the head of the family living at the cottage. *Silverman* v. *Silverman,* 145 Conn. 663, 667.

[6] "There was much denunciation of these fictions and their consequences, as a result of which they steadily lost ground." Prosser, Torts (3d Ed.) p. 501; see also 2 Harper & James, Torts, p. 1264; Lessler, "Imputed Negligence," 25 Conn. B.J. 30.

gence of the bailee to the bailor. *Currie* v. *Consolidated Ry. Co.*, 81 Conn. 383, 388.[7] Similarly, that court has indicated that it will disregard[8] an early case *(Peck* v. *New York, N.H. & H.R. Co.*, 50 Conn. 379, 392) that says that a husband's negligence is to be imputed to his wife. So, also, now contributory negligence will not be imputed, on the basis of the relationship alone, because of an operator-passenger relationship *(Silverman* v. *Silverman*, 145 Conn. 663, 668) or a parent-child relationship (ibid.; *Simon* v. *Nelson*, 118 Conn. 154, 157).

On the other hand, there are still two classes of cases in which contributory negligence is ordinarily imputed. One class is the master-servant cases,[9] and in those cases the master is charged with the contributory negligence of the servant for reasons of policy embodied in the rule of respondeat superior.[10] The other class is those cases where the person to whom the contributory negligence of the operator is to be imputed is physically present in the vehicle and controls, or as a result of his relationship to the driver or the vehicle has the legal power to control, the operator. In this latter class fall the joint enterprise cases,[11] the cases where someone other than the person behind the wheel is in "actual control" *(Archambault* v. *Holmes*, 125 Conn. 167, 170), and the cases, most closely resembling the instant case, where the owner of a family car occupies it while it is being driven by a member

[7] Before 1890-1900, the general common-law rule was to the contrary. Gregory & Kalven, Cases and Materials on Torts, p. 216.

[8] Wright, Conn. Law of Torts § 70, p. 103, & Sup., p. 34.

[9] Lessler, *supra* note 6, at 38.

[10] Traditional and modern views of the reasons for the policy are summarized in Prosser, *op. cit. supra* note 6, at 471. An interesting series of abstracts from essays about the policy may be found in Gregory & Kalven, *op. cit. supra* note 7, at 703.

[11] In this state, the joint enterprise rule has been recognized but not well-received. See *Weller* v. *Fish Transport Co.*, 123 Conn. 49, 54.

of his family *(Nettles* v. *Home Oil Co.,* 8 Conn. Sup. 145).[12] Although both classes of cases are easily distinguished, they are both merely applications of the policy of the law of torts to find a touchstone for accountability in control, and it is that control that delineates the present perimeters of imputed contributory negligence in the reported Connecticut cases.

What, then, is the argument for extending those perimeters to embrace cases like the instant case, where the owner is not an occupant of the vehicle and, accordingly, is not in a position to control the operator? The basic argument is that Mrs. Tanguay would be deemed the plaintiff's servant[13] in an action against the plaintiff, and therefore (the argument states) Mrs. Tanguay should be deemed the plaintiff's servant in an action by the plaintiff. This line of argument ignores the fact that the family car doctrine, which is the basis for deeming Mrs. Tanguay a servant, was formulated not to prevent a car owner from recovering for damage caused by the negligence of another, but to enable "a person injured by the negligence" of another to recover from the car owner. *Durso* v. *A. D. Cozzolino, Inc.,* 128 Conn. 24, 26. In other words, the family car doctrine was intended to be a sword and not a shield.[14]

It is only in the fiction of the family car doctrine[15] that Mrs. Tanguay was the plaintiff's servant. In

---

[12] It is apparent from the statement of facts in *Nettles* and the authorities cited in the case that the court regarded the case only as an "owner-occupant" case, and not as a case involving the issue raised by the instant case.

[13] In family car cases, the operator is often referred to as an "agent." It is clear, however, that the reference is to a servant-agent, since ordinarily there is no liability for the negligence of a nonservant agent. Prosser, *op. cit. supra* note 6, at 479.

[14] See Lessler, *supra* note 6, at 47.

[15] Prosser, *op. cit. supra* note 6, at 497.

fact, Mrs. Tanguay was the plaintiff's bailee. *Wolf* v. *Sulik,* 93 Conn. 431, 434. The reasons why a bailee's negligence should not be imputed to a bailor are persuasively set forth by *Rugg, C. J.,* in *Nash* v. *Lang,* 268 Mass. 407. Thus, in deciding whether Mrs. Tanguay's negligence should be imputed to the plaintiff, the court is called upon to choose between persuasive reasons that accord with the facts and dubious reasoning that is based upon a fiction. The court holds that Mrs. Tanguay was a bailee, not a servant, and that her negligence is not to be imputed to the plaintiff.

The result reached by the court accords with the result reached in analogous cases, under "owner-consent statutes," in *McMartin* v. *Saemisch,* 254 Iowa 45; *Jacobsen* v. *Dailey,* 228 Minn. 201; and *Mills* v. *Gabriel,* 259 App. Div. 60, aff'd, 284 N.Y. 755. It does not accord with the "two-ways test"[16] set forth in the Restatement, 2 Torts § 485, but the caveat to that section and the comment on the caveat clearly indicate that the "two-ways test" should not be applied in family car cases unless the purpose of the family car doctrine is to "create a universally applicable vicarious responsibility." The Connecticut family car statute[17] evidences no legislative intention to create a "universally applicable vicarious responsibility," for, as has been pointed out, the statute can be read only as being an aid to the plaintiff. Similarly, the decisions of the Supreme Court of Errors have consistently spoken of the purpose of the doctrine solely in terms of enabling a plaintiff to obtain an effective recovery from the defendant. Such a purpose implements and is entirely consistent with those decisions of the court that have been continually narrowing the applica-

---

[16] For a criticism of the "two-ways test" as applied to family-car cases, see 2 Harper & James, *op. cit. supra* note 6, at 1274.

[17] General Statutes § 52-182.

tion of the fiction of imputed contributory negligence. In the light of these considerations, the court can conclude only that the "two-ways test" should not be applied to family car cases in this state.

Judgment may enter for the plaintiff to recover $349.90, the stipulated damages, from the defendants.