JAYE HUNT *v.* GERTRUDE RICHTER ET AL.

BEVERLY HARRISON ET AL. *v.* GERTRUDE RICHTER ET AL.

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

Argued March 9—decided May 11, 1972

*James O. Shea,* with whom, on the brief, was *Marshall N. Dudley,* for the appellant (plaintiff) in the first case.

*Jackson T. King,* with whom were *Paul E. Farren, Jr.,* and, on the brief, *Paul E. Farren,* for the appellants (plaintiffs) in the second case.

*Carl E. Cella,* for the appellee (named defendant) in each case.

LOISELLE, J. These cases present identical issues. Pursuant to Practice Book § 606, the parties have stipulated that the cases be combined for purposes of this appeal and that a separate judgment be rendered in each case.

The cases arise out of a collision in which the plaintiffs were injured while passengers in a motor vehicle operated by Bruce Harrison. The Harrison vehicle collided with a vehicle operated by the defendant William Richter and owned by the defendant Gertrude Richter. The jury returned a verdict for the plaintiffs against William Richter only and the plaintiffs moved that the verdict in favor of Gertrude Richter be set aside. The court denied the motion and the plaintiffs appealed from the

judgment rendered in favor of Gertrude Richter and the denial of the motion to set aside the verdict in her favor.

The plaintiffs have assigned as error the refusal of the court to include five paragraphs in their claims of proof. One of these paragraphs was admitted in the pleadings and three others are supported by the evidence printed in the appendix. "Where a party seeks additions to his own claims of proof in a case tried to the jury, the additions should be made if they are material and are supported by the evidence." *Phoenix Mutual Life Ins. Co.* v. *Brenckman,* 148 Conn. 391, 394, 171 A.2d 194; *Darling* v. *Burrone Bros., Inc.,* 162 Conn. 187, 190, 292 A.2d 912; *Castaldo* v. *D'Eramo,* 140 Conn. 88, 93, 98 A.2d 664. The finding is, accordingly, corrected by adding to it claims from the draft finding that are supported by the evidence.

The claims of proof of the plaintiffs as corrected include the following: On February 26, 1965, the plaintiffs were passengers in a vehicle operated by Bruce Harrison in a westerly direction on a public highway, route 1, in the town of Guilford. A vehicle owned by Gertrude Richter and operated by her son, William Richter, in an easterly direction on route 1 collided with the Harrison vehicle. The collision was due to the negligence of William Richter and, as a result of the collision, the plaintiffs suffered personal injuries. William Richter was married on March 8, 1964, and since that day has lived with his wife in a household separate from that of his mother. Prior to his marriage, he had lived with his mother and brother. Before and during his marriage, William Richter had access to his mother's home and automobile. On occasions before and after his marriage, William Richter had used his mother's auto-

mobile. On February 19, 1965, Gertrude Richter left Guilford for a vacation in Florida. On February 23, 1965, the braking system on William Richter's automobile was faulty and, as he needed a vehicle to enable him to commute to his place of employment, he took his mother's automobile out of her garage and drove his own automobile into the garage. The keys to his mother's automobile were over the visor as they had been when he had used the vehicle on previous occasions. He used his mother's automobile for at least three days prior to the time of the collision. Gertrude Richter would have allowed her son to use the vehicle if she had known that his automobile needed repair. Her son's use of her automobile gave her pleasure and satisfaction. She let her son use her automobile when he needed it. Another son, who lived in her home, also had used her automobile prior to the time of the accident. Gertrude Richter did not learn about the accident until she returned from Florida, four or five days after it occurred. She made no complaint to the police about her son's use of her automobile.

The three remaining assignments of error, (1) that the court erred in failing to charge as requested, (2) in charging as it did, and (3) in failing to set aside the verdict, are concerned with whether General Statutes § 52-182 broadens the scope of the family car doctrine to include situations in which the owner and operator come within the designated relationship but reside in separate households.[1]

---

[1] "[General Statutes] Sec. 52-182. PRESUMPTION OF FAMILY CAR OR MOTORBOAT IN OPERATION BY CERTAIN PERSONS. Proof that the operator of a motor vehicle or a motorboat, as defined in section 15-127, was the husband, wife, father, mother, son or daughter of the owner shall raise a presumption that such motor vehicle or motorboat was being operated as a family car or boat within the scope of a general authority from the owner, and shall impose upon the defendant the burden of rebutting such presumption."

The family car doctrine was first enunciated in this state in 1919 in the case of *Wolf* v. *Sulik,* 93 Conn. 431, 436, 106 A. 443, although the case was decided upon the construction of a bailment statute. Rev. 1918, § 1572. This statute was repealed in 1921. In the absence of the statute, our court adopted the rule that "when a motor-car is maintained by the paterfamilias for the general use and convenience of his family, he is liable for the negligence of a member of the family having general authority to drive it, while the car is being used as a family car." *Stickney* v. *Epstein,* 100 Conn. 170, 179, 123 A. 1. The doctrine was restated in *Haugh* v. *Kirsch,* 105 Conn. 429, 431, 135 A. 568: "[W]hen an automobile is maintained by the owner thereof for the general use and convenience of his or her family, such owner is liable for the negligence of a member of the family, having general authority to drive the car."

The case of *Smart* v. *Bissonette,* 106 Conn. 447, 452, 138 A. 365, defined the word "family," as used in the family car doctrine, as follows: "The owner of the car may be the 'paterfamilias,' the head of the household, who maintains the car for the general use and convenience of his family, but the family group is not necessarily confined to those of his own kindred; it includes all those members of the collective body of persons living in his household for whose convenience the car is actually maintained and who have general authority to use it."

It is clear that the common-law rule of the family car doctrine requires the operator of the vehicle to be a member of the owner's household; *Mitchell* v. *Resto,* 157 Conn. 258, 260, 253 A.2d 25, *Durso* v. *A. D. Cozzolino, Inc.,* 128 Conn. 24, 26, 20 A.2d 392, *Smart* v. *Bissonette,* supra; except where the opera-

tor is under the immediate direction of a member for whose benefit the vehicle was furnished, for whom he is driving with the approval and consent of the owner. *Dibble* v. *Wolff,* 135 Conn. 428, 435, 65 A.2d 479.

The plaintiffs claim that, as William Richter was the son of Gertrude Richter, the presumption in § 52-182 is applicable in this case and invokes the family car doctrine in her favor. They argue that, even if the common-law family car doctrine is restricted to members of one household or to those acting as an alter ego of a member of the household, the statute enlarged the doctrine so that an operator of a vehicle within the relationship outlined in the statute falls within the family car doctrine whether or not he was a member of the same household.

In *O'Keefe* v. *Fitzgerald,* 106 Conn. 294, 299, 137 A. 858, it was emphasized that one limitation in our family car doctrine not found in other states was that the operator must be shown to have had from the owner " 'general authority to drive the car while it is being used as such family car, that is, for the pleasure or convenience of the family or a member of it.' " In *Maher* v. *Fahy,* 112 Conn. 76, 151 A. 318, decided in 1930, this court again emphasized the limitation in our family car doctrine as stated in the *O'Keefe* case—that an essential element of the rule was proof of "general authority to drive the car" and that if the plaintiff only showed special permission or restricted use of a vehicle such a showing was not sufficient to establish "general authority."

In 1931, the predecessor of General Statutes § 52-182 was enacted and remained without relevant change to the time of the collision involved in this case. The purpose and effect of the enactment of § 52-182 was not to affect or create substantive

rights; its purpose was merely to govern procedure.[2] *Baker* v. *Paradiso,* 117 Conn. 539, 545, 169 A. 272; see *Toletti* v. *Bidizcki,* 118 Conn. 531, 173 A. 223. It was enacted as an "implementation" to aid a plaintiff in his proof, where the operator and owner are of a certain designated relationship. *Silverman* v. *Silverman,* 145 Conn. 663, 667, 145 A.2d 826. In the often-cited case of *O'Dea* v. *Amodeo,* 118 Conn. 58, 65–66, 170 A. 486, the court said: "[T]he intent of the statute is that the presumption shall avail the plaintiff until such time as the trier finds proven the circumstances of the situation with reference to the use made of the car and the authority of the person operating it to drive it, leaving the burden then upon the plaintiff to establish, in view of the facts so found, that the car was being operated at the time as a family-car." If the trier finds that facts establishing the situation with reference to the use made of the vehicle are proven, the presumption created by the statute disappears and the plaintiff cannot prevail, unless those facts, without regard to the provisions of the statute, afford a sufficient basis for finding that the vehicle is a family car. *Silverman* v. *Silverman,* supra; *Dibble* v. *Wolff,* supra, 433. As the statute creates only a rebuttable presumption, no new substantive rights were created. If the presumption is rebutted by evidence introduced by the parties, the plaintiff will succeed only if he is able to prove that the common-law doctrine is applicable.

Even when a defendant does produce evidence of the situation surrounding the use of the vehicle, the presumption created by the statute does not dis-

---

[2] The effect of the addition of motorboats to the statute in 1967 need not be considered as the collision in question was between motor vehicles prior to the amendment of the statute.

appear, as the trier may disbelieve the evidence. Consequently, although such evidence is produced by the defendant, the court must submit the case to the jury for its determination of the issues of fact; *Dibble* v. *Wolff*, supra; *Koops* v. *Gregg*, 130 Conn. 185, 191, 32 A.2d 653; *O'Dea* v. *Amodeo*, supra, 66, 67; *Porcello* v. *Finnan*, 113 Conn. 730, 734, 156 A. 863; unless as a matter of law the jury could not reasonably find the elements of the doctrine based on the evidence.

Ordinarily, the fact that General Statutes § 52-182 places the burden on the defendant to rebut the presumption would preclude the court from taking this issue from the jury. In this case, however, the plaintiffs did not rely on the presumption so as to force the defendant to rebut it. Instead, the plaintiffs went forward with complete offers of proof by which they hoped to establish the requisite elements for recovery under the family car doctrine, as they interpreted it. These offers of proof are reiterated in their briefs. Even if their offers of proof were construed most favorably for the plaintiffs, they could not prevail against the defendant Gertrude Richter because they include offers of proof that William Richter was married and living apart from his mother's household. For the reasons stated above, the jury could not reasonably have found an actionable agency relationship from the claims of the plaintiffs. The court was not, therefore, in error when it refused to charge on the family car doctrine. *Mitchell* v. *Resto*, 157 Conn. 258, 264, 253 A.2d 25.

There is no error in either case.

In this opinion the other judges concurred.